Emil LANGELAND, Plaintiff
and Appellant,

v.

MONARCH MOTORS, INC., a Utah corporation, J.L. Llavina, and American Bonding Company, Defendants and Appellees.

No. 950454.

Supreme Court of Utah.

Jan. 23, 1998.

Todd S. Winegar, Wade S. Winegar, Ian M. Adams, Salt Lake City, for plaintiff and appellant.

Todd S. Richardson, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

Plaintiff Emil Langeland seeks interlocutory review of the district court's order allowing defendant Monarch Motors, Inc., to amend or withdraw its answers to requests for admission that Langeland served on Monarch and that were deemed admitted by Monarch when it failed to timely respond to the requests.[1]

## FACTS

In 1992, Emil Langeland bought a used 1991 model Porsche convertible automobile from Monarch for $30,750. He alleges that defendant J.L. Llavina, a manager at Monarch, told him that the car had suffered only light body damage which could be repaired for about $7000 and that when Langeland asked about some apparent water damage, Llavina told him that the damage occurred when the car was left in the rain with the convertible top down and that it could be repaired for an additional $500 to $700. He further alleges that Llavina told him the car carried the remainder of its manufacturer's warranty and that Monarch would deliver clear title to the car. After purchasing the vehicle, Langeland discovered that the car was not under warranty, that it had been bought by Monarch under a salvage title, and that it had suffered extensive water damage as the result of being completely submerged in a lake for some time. The cost of repairs totaled $37,630.93, significantly more than Monarch's $7700 estimate. Langeland filed this action, seeking damages and rescission of the vehicle sales contract.

Langeland served Monarch with a set of thirteen requests for admission on May 31,

---

1. We issued an opinion in this case on December 31, 1996. After a petition for rehearing was filed, we reconsidered that opinion and did not release it for publication. Our previous opinion is therefore withdrawn, and we issue this opinion instead.

1994. Monarch did not respond, and the requests were deemed admitted thirty days later under rule 36(a), which provides:

> Each matter of which an admission is requested ... is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney....

Utah R. Civ. P. 36(a). Almost nine months later, on February 23, 1995, counsel for Langeland, while not required to do so, reminded Monarch's counsel that the requests had not been answered and requested a response. On March 14, Monarch's counsel faxed an unsigned copy of answers to Langeland's counsel, together with a letter promising that the answers would be signed and a copy delivered on March 17. However, Monarch never delivered the signed responses, which are required by the rules. Finally, on July 14, nearly fourteen months after the requests were served, Langeland moved for summary judgment, relying on rule 36(a). Two weeks later, Monarch moved to withdraw or amend its answers pursuant to rule 36(b), and the trial court granted the motion. We granted Langeland's petition for interlocutory review.

### STANDARD OF REVIEW

■ Both parties agree that this court should review the trial court's order for abuse of discretion, but they do not agree on the application of this standard. Monarch argues that orders permitting withdrawal or amendment of admissions are purely within the discretion of the trial court and can be reversed only if there is no reasonable basis for the order. Langeland contends that certain preliminary requirements must be met under rule 36(b) before the trial court can grant such an amendment and that the trial court abuses its discretion by permitting a party to amend its admissions without first satisfying those requirements.

While Monarch fairly characterizes the standard of review as "abuse of discretion," Langeland more accurately describes the process of review we are required to make in this case. A close examination of rule 36(b) and applicable case law shows that the decision to permit amendment of rule 36 admissions is not entirely within the discretion of the trial court; judicial discretion is permitted only after certain preliminary conditions have been met. Rule 36(b) provides in pertinent part:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.... [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Utah R. Civ. P. 36(b). Our decisions interpreting the rule have used similar language, conditioning the trial court's discretion on the satisfaction of the rule's preliminary conditions:

> Utah R. Civ. P. 36(b) provides that those matters deemed admitted are conclusively established as true unless the trial court, on motion by the defendant, permits withdrawal or amendment of the admissions. The trial court has the discretion to permit withdrawal or amendment of admissions when the presentation of the merits of the action would be served and the party obtaining the admissions fails to satisfy the court that he will be prejudiced in maintaining his action. *The trial court does not have discretion to unilaterally disregard the admissions.*

*Jensen v. Pioneer Dodge Ctr., Inc.,* 702 P.2d 98, 100 (Utah 1985) (emphasis added) (footnotes omitted); *see also Whitaker v. Nikols,* 699 P.2d 685, 686–87 (Utah 1985); *Brunetti v. Mascaro,* 854 P.2d 555, 558 (Utah Ct.App. 1993).

■ Because the trial court's decision to grant a rule 36(b) motion is not entirely discretionary, our review of such a decision is not a typical review for "abuse of discretion." Instead, we review these decisions in two steps, using what might be called a "conditional" discretionary standard. In the first

step, we review the trial court's determinations as to whether amendment or withdrawal would serve the presentation of the merits and whether amendment or withdrawal would result in prejudice to the nonmoving party. In the second step, we review the trial court's discretion to grant or deny the motion. The trial court has discretion to deny a motion to amend, but its discretion to grant such a motion comes into play only after the preliminary requirements are satisfied. Decisions placed within the discretion of the trial court can be reversed only upon a finding of abuse of discretion, i.e., if there is no reasonable basis for the decision. *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 938 (Utah 1993). But because the rule does not give the trial court discretion to disregard the preliminary conditions of rule 36(b), its judgment as to whether those conditions have been satisfied is subject to a somewhat more exacting standard of review.[2]

## ANALYSIS

 The policy behind rule 36 is to facilitate and expedite the discovery process by allowing parties to obtain admissions as to certain undisputed matters and thus avoid the effort and expense of having to conduct discovery as to those matters. The penalty provided in rule 36(b), automatically admitting and establishing requests not responded to within thirty days, was conceived as a means of preventing abuse of the discovery process and facilitating the smooth administration of justice. Requests for admission must be taken seriously, and answers or objections must be served promptly. The penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of rule 36 should not lightly escape the consequences of

the rule. As we have earlier pointed out, the decision of the trial judge to permit withdrawal or amendment of Monarch's admissions can therefore be upheld only if (1) amendment or withdrawal would serve the presentation of the merits of the action, and (2) amendment or withdrawal would not prejudice Langeland in maintaining his action on the merits. Regarding these requirements, however, the trial court did not supply any findings of fact or conclusions of law on these questions but simply granted leave to withdraw or amend without any supporting analysis. Therefore, we must review compliance with the rule 36(b) requirements de novo to determine whether the trial court had discretion to grant the motion.

### A. Does Withdrawal of the Admissions Subserve Presentation of the Case on the Merits?

 Utah case law does not provide a clearly articulated standard for determining when amendment or withdrawal of admissions would serve the presentation of the merits of an action. In *Brunetti*, 854 P.2d at 558–59, the trial court had determined that "[o]n the basis" of the defendant's "good faith" efforts to respond to the requests for admission and his "reasonable oversight" as to when his response was required, "the merits of the action would be undermined unless the admissions were withdrawn." While the court of appeals upheld this decision, it is difficult to see how an explanation of the movant's reasons for delay is relevant to the presentation of the merits,[3] although these proffered excuses showing good cause for delay may influence a judge in the exercise of discretion.

A more helpful test is suggested in a footnote to *Brunetti* in which the court of ap-

---

**2.** The language of the rule requiring the party opposing amendment to "satisfy the court that withdrawal or amendment will prejudice him" may seem to indicate that the trial court has broad discretion to decide when it is "satisfied." However, this language need not be understood as a statement of the court's discretion. Rather, it should be read merely as an indication that the burden of persuasion as to this element falls on the party opposing amendment or withdrawal.

**3.** We assume that the court of appeals in *Brunetti* was operating under the assumption that the abuse of discretion standard should govern its entire review of the trial court's rule 36(b) decision and that "any reasonable basis" for that decision was therefore sufficient grounds for affirmation. With the conditional discretionary standard we announce today, we disavow any implication that a party's reasonable excuses for delay constitute a sufficient basis for finding that amendment of admissions will serve the presentation of the merits of an action.

peals stated, "This determination [that the merits of the action would be undermined unless the admissions were withdrawn] was additionally supported by the fact that [the plaintiff] was unable to prove the truth of the requested admissions at trial." *Id.* at 559 n. 1. Clearly if the admissions are untrue, allowing amendment or withdrawal would serve as a presentation of the merits of an action. However, the burden of showing the truth or falsity of admissions should not, as the *Brunetti* court seems to imply, fall on the party that obtained the admissions but rather on the party seeking to amend or withdraw them. The point of an admission is to excuse the party obtaining it from introducing evidence on the matter. If admissions are false, the party that admitted the false matters—whether by response or by operation of rule 36(a)—bears the burden of proof on the matter.

■ Having concluded that the burden falls on the party moving for amendment, we are still faced with the question of just how that burden may be met. Monarch argues that on the basis of federal court interpretations of the Federal Rules of Civil Procedure, the presentation of the merits of an action is served by amending admissions anytime the merits are contested. *Clark v. City of Munster*, 115 F.R.D. 609, 612 (N.D.Ind.1987).[4] Arguing from this authority, Monarch submits that its own unsworn denial of the matters admitted against it should suffice to convince the court that a presentation of the merits would be served by amendment of its admissions. However, the time to deny admissions is within thirty days of receiving the request for admissions. Once these matters have been admitted against a party, something more than a bare denial is required to convince the court that the admissions should be withdrawn or amended and that the merits of the matter should be argued in court. The test under rule 36(b) may therefore be

articulated as follows: To show that a presentation of the merits of an action would be served by amendment or withdrawal of an admission, the party seeking amendment or withdrawal must (1) show that the matters deemed admitted against it are relevant to the merits of the underlying cause of action, and (2) introduce some evidence by affidavit or otherwise of specific facts indicating that the matters deemed admitted against it are in fact untrue.

■ We first address the question of the relevance of the admissions to the merits. Of all the requests for admission that were before the trial court, only request No. 2—that Monarch had knowledge that the automobile in question had been submerged in water prior to the sale—is briefed on appeal. Monarch concedes that "admission No. 2, . . . would, if admitted, establish one of the most important factual questions presented in the lawsuit."

Although the amended complaint specifically charges only Llavina and not Monarch with knowledge of the Porsche's prior history, Llavina's knowledge would be imputed to Monarch and support the complaint's allegations against it of "devious acts" and "fraudulent representations." Therefore, even under the amended complaint, admission No. 2 is clearly relevant to the merits.

We turn next to the second part of the test. Monarch's brief states that in its motion for leave to withdraw or amend answers to request for admissions, "defendant provided numerous arguments to the trial court, all of which are suggestive that presentation of the lawsuit on the merits would be subserved by allowing the admissions to be amended." However, while the motion disputes the admissions which Monarch wishes to deny, it lacks any sort of detailed articulation of such arguments[5] and is entirely devoid of evi-

---

**4.** While federal cases are instructive, and perhaps even persuasive, they are by no means authoritative and certainly not controlling, as Monarch would suggest. The Utah Rules of Civil Procedure were adopted by the Utah Supreme Court under authority of section 78–2–4 of the Utah Code. Although the Federal Rules of Civil Procedure served as their model, and in many respects the Utah Rules obviously resemble the

Federal Rules, the Utah Rules are an independent body of rules. Thus federal cases interpreting analogous Federal Rules are compelling to our interpretation of the Utah Rules only insofar as their reasoning is logical and persuasive.

**5.** "Issues not briefed by an appellant are deemed waived and abandoned." *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1185

dence of specific facts contradicting the admissions. The record is devoid of any sworn statement that admission No. 2 is untrue. Instead, both the brief and the motion focus almost exclusively on the second-tier requirement that the nonmoving party fails to show prejudice from the amendment or withdrawal of the admissions.

Therefore, we find that while Monarch has shown that its knowledge of the prior history of the car is relevant to the merits, it has failed to come forward with evidence of specific facts indicating that the matters deemed admitted against it are in fact untrue. Consequently, Monarch has not established that the presentation of the case on the merits would be subserved by the withdrawal or amendment of the admissions.

## B. Showing of Prejudice to Plaintiff in Maintaining an Action on the Merits

■ Although Monarch's failure to satisfy the first requirement of rule 36(b) relieves Langeland of the burden of showing that he would suffer prejudice as a result of the withdrawal or amendment of the admissions, he has met that burden nevertheless.

Langeland defines prejudice as "some harm or injury that the party obtaining admissions has detrimentally suffered in prosecuting the action" and argues that he will be prejudiced by withdrawal of the admissions because "the rule is designed to expedite litigation, and it permits the party securing admissions to rely on their binding effect." *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C.Cir.1981) (citations omitted). He contends, therefore, that when the party obtaining the admissions cannot, in fact, rely on them, "[w]itnesses become unavailable or forget facts about an incident, meager resources will be expended in combating another [party's] disregard for court rules thereby preventing a party from being able to prosecute a matter in court."

■ Monarch correctly maintains that the mere necessity of proving matters for-

merly admitted does not constitute prejudice but does admit that difficulties in proof specifically occasioned by the delay may qualify. It relies on *Brook Village North Associates v. General Electric Co.*, 686 F.2d 66 (1st Cir.1982), for the proposition that the prejudice contemplated by Federal Rule of Civil Procedure 36(b)

> is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving the case, *e.g.*, cause[d] by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

*Id.* at 70–71 (citation omitted). Additionally, Monarch quotes 10A Lawyers Edition, *Federal Procedure* § 26:591 (1994), that the "test of whether a party will be prejudiced by the withdrawal of an admission is whether the party is now any less able to obtain the evidence required to prove the matter which was admitted than he would have been at the time the admission was made." On this issue, we find the interpretation of the Federal Rule analogous to Utah Rule 36(b) to be logical and persuasive.

Langeland alleges that during the time the admissions went unanswered, American Bonding Company went into receivership, and Monarch Motors, Inc., dissolved as a corporation, "which significantly alters the case and prejudices Langeland." We agree that the dissolution of Monarch in and of itself makes witnesses unavailable, or at the very least more difficult to contact, and complicates all aspects of the legal procedures, thus obstructing Langeland's ability to prosecute the matter in court. Therefore, by Monarch's own test, Langeland has shown prejudice to himself as a result of the withdrawal of the admissions.

## CONCLUSION

Monarch failed to meet the initial requirement of rule 36(b) by showing that withdrawal or amendment of the admissions would

n. 5 (Utah 1996) (citing *Pixton v. State Farm Mut. Auto. Ins. Co.*, 809 P.2d 746, 751 (Utah Ct.App. 1991)).

subserve presentation of the case on the merits. Langeland showed that withdrawal or amendment would prejudice him in maintaining his action on the merits even though Monarch's failure to meet the first requirement relieved Langeland of this burden. Therefore, the trial court had no discretion to grant Monarch's motion.

We further note that Langeland submitted requests for admissions, waited thirty days after which they were deemed admitted, waited another nine months, reminded Monarch that replies were outstanding, received legally insufficient replies, never received either the promised official copies *or* a request to withdraw, waited another four months, and finally filed his motion for summary judgment on the basis of the information at his disposal, *after which* Monarch sought to withdraw and amend its admissions. Thus it is by no means clear that the motion should have been granted even if the *requirements* of rule 36(b) had been met. Litigation must come to an end sometime, and the rules of procedure are intended to provide an orderly schedule for moving cases along their track to conclusion—not to squander legal, judicial, and financial resources by generating lawsuits within lawsuits to determine whether the rules must actually be followed. Consequently, the court will not come to the rescue of a party who flagrantly ignores these rules at the expense of a party who attempts to conform with them. Having failed to satisfy the rule 36(b) prerequisites to the trial court's discretion to grant leave to withdraw or amend the admissions, the offender must live with the consequences of its actions.

Order reversed.

ZIMMERMAN, C.J., and STEWART and RUSSON, JJ., concur in Associate Chief Justice HOWE's opinion.

DURHAM, Justice, dissenting:

While I agree with much of the well-reasoned opinion of the majority, I narrowly dissent as to the result reached. The majority, while applying the germane standards and tests, failed to afford the trial court appropriate discretion. I would accordingly uphold the trial court's decision to allow defendants time to respond to plaintiff's admissions.

The majority correctly identified the test for determining rule 36 review by this court:

[T]he decision of the trial judge to permit withdrawal or amendment of Monarch's admissions can therefore be upheld only if (1) amendment or withdrawal would serve the presentation of the merits of the action, and (2) amendment or withdrawal would not prejudice Langeland in maintaining his action on the merits.

Because this court had never before articulated a test for determining whether amendment or withdrawal would serve the presentation of the merits of the action, the majority declared the following two-pronged analysis for deciding element (1) of the test enunciated above:

To show that a presentation of the merits of an action would be served by amendment or withdrawal of an admission, the party seeking amendment or withdrawal must (1) show that the matters deemed admitted against it are relevant to the merits of the underlying cause of action, and (2) introduce some evidence by affidavit or otherwise of specific facts indicating that the matters deemed admitted against it are in fact untrue.

The majority simply found that Monarch, the party seeking amendment, met the first prong of this test but failed to meet the second prong. The majority claims that Monarch failed to introduce any evidence or specific facts whatsoever that would support its claim that the matters deemed admitted against it were in fact untrue. Because this second element was not met, the majority holds that Monarch failed to meet the rule 36 test. Further, the majority holds that Langeland conclusively showed that he would suffer prejudice as a result of the withdrawal or amendment of the admissions.

I specifically disagree with the majority on the following two points: (1) Monarch *did* introduce evidence of specific facts that supported its claim that the matters admitted against it were untrue; and (2) Langeland would suffer *no* prejudice if the admissions were withdrawn or amended.

## I. EVIDENCE OF SPECIFIC FACTS

The majority finds that the trial court abused its discretion in holding that Monarch had introduced evidence of specific facts indicating that the matters deemed admitted against it were untrue. On this point alone, the majority overturns the trial court, holding that the specific facts of untrue admissions were not introduced in the brief or the record. I disagree.

In both its motion for leave to amend or withdraw answers to request for admissions and its brief before this court, Monarch stated conclusively that it denied several of the admissions and offered specific facts as to why it denied such admissions. While no affidavit accompanied the record, the majority overstates the lack of "specific facts indicating that the matters deemed admitted against it are in fact untrue" when it writes:

> However, while the motion disputes the admission which Monarch later wished to deny, it lacks any sort of detailed articulation of such arguments and is entirely devoid of evidence of specific facts contradicting the admissions. The record is devoid of any sworn statement that admission No. 2 is untrue.

(Footnote omitted.) The record is not "entirely devoid" of evidence of specific facts. Monarch asserts in the record specific information as to the salvage title issued by the state of Arizona and explains why Utah took no titling action in describing its denial of an admission. The trial court, with the record before it, easily could have found that specific facts were presented. We should respect the trial judge's discretion.

These issues are important, but they are ultimately procedural in nature and do not implicate fundamental rights. The preconditions for amendment of admissions under rule 36(b) do not therefore require the level of vigilant protection that a de novo review by this court would afford. *See State v. Pena*, 869 P.2d 932, 938 (Utah 1994) (describing "situations in which we narrow the pasture [of discretion] for policy reasons," and citing as examples *State v. Thurman*, 846 P.2d 1256, 1266 (Utah 1993) (considering whether search violated Fourth Amendment); *Utah Assoc. Mun. Power Sys. v. Pub-*

*lic Serv. Comm'n*, 789 P.2d 298, 301–02 (Utah 1990) (deciding constitutionality of delegating certain legislative powers)). The policy considerations in the present case persuade me that an intermediate standard is appropriate for review of the trial court's rule 36 preliminary determinations.

However, *Pena* makes clear that public policy is just one factor to be considered in establishing the appropriate standard of review. While policy considerations may persuade us to narrow the scope of discretion in certain cases, *Pena* also indicates that in certain situations broader discretion should be granted to the trial court:

> (i) when the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out; (ii) when the situation to which the legal principle is to be applied is sufficiently new to the courts that appellate judges are unable to anticipate and articulate definitively what factors should be outcome determinative; and (iii) when the trial judge has observed "facts," such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts.

*Pena*, 869 P.2d at 939 (citing Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 662–63 (1971)).

As for the first requirement, the facts to which rule 36(b) are to be applied appear at first neither varying nor complex. Each case, like the case at hand, must involve a party moving to amend admissions deemed admitted against it by virtue of its failure to respond to a request for admissions within thirty days. Nevertheless, I recognize the difficulty of trying to predict what kinds of factual variations may present themselves in the future and am willing to admit that trial courts generally occupy a better position to address those variations. This difficulty would indicate that broader "pasture," or discretion, should be afforded trial courts. However, the second and third factors justify a narrower grant of discretion in this case.

And finally, because Monarch's motion to amend was granted purely on the record and memoranda submitted in support of or opposition to the motion to amend, no trial court ever held a hearing. The trial judge in this case could therefore have observed no relevant "facts" outside the record. Analysis of these three factors causes me to conclude that we should grant some deference in this case.

In reviewing a trial court's decision to grant a rule 36 motion to amend, we should give some deference to the trial court's findings that the presentation of the action's merits would be served by amendment and that amendment would not prejudice the other party's action or defense. Once these threshold conditions are satisfied, the trial court has full discretion to grant or deny the motion to amend, and its decision should be reversed only if the judge appears to have abused her discretion, that is, if there was no reasonable basis for it.

I agree with the majority that Monarch could have more strongly presented its specific facts and evidence. However, the record and brief are not so devoid of such information as to constitute an abuse of discretion by the trial court.

## II. PREJUDICE

Because the majority finds that Monarch failed to show evidence of specific facts, it did not need to reach the prejudice analysis. Nevertheless, the majority reaches out to conclude that Langeland would suffer prejudice if amendment or withdrawal of the admissions is allowed. This simply is not so. Langeland argues various grounds for finding prejudice. I will examine each of his arguments individually. His memorandum in opposition to defendants' motion for leave to amend or withdraw answers to requests for admissions states the following grounds for a finding of prejudice:

Each delay caused by defendant's failure to follow the rules ... increases the costs to the plaintiff in attorney's fees, interest[,] and other factors.... [T]he value of the car has been dramatically effected [sic] by depreciation.... [T]his has prejudiced the plaintiff because of defendant's delays. The changing situation of the defendants and the ability to collect on a judgment is prejudiced with each delay as well.

The first two factors mentioned by Langeland—the costs of attorney fees and interest and the depreciation of the value of the car—have, as Langeland suggests, been caused or at least exacerbated by Monarch Motors' unnecessary delays. However, arguing that Monarch's delays have caused Langeland to incur additional costs is not the same as arguing that Langeland will be prejudiced in his cause of action if the court permits Monarch to amend its admissions. Certainly, an amendment, if permitted, would require Langeland to argue the merits of various matters now deemed admitted against Monarch Motors. This result would protract the litigation and inevitably cause further costs to Langeland. But these costs are clearly not the kind of prejudice contemplated by rule 36(b). While additional costs are certainly prejudicial to Langeland's interests in the broadest sense, they do not "prejudice him in maintaining his action ... on the merits" as required by the rule. Costs associated with the burden of addressing the merits will be present every time an amendment is permitted; accepting these as "prejudice" under rule 36 would render nugatory the rule's requirement that prejudice be shown.

The other "prejudicial" factors mentioned by Langeland—described simply as "the changing situation of the defendants and the ability to collect on a judgment"—are so vague that the trial court could not reasonably have been expected to know what facts Langeland referred to or to understand in what way his cause of action would be prejudiced. Langeland makes various arguments on appeal to clarify these assertions, but the trial court did not have the benefit of these clarifications. Furthermore, upon examining the various forms of prejudice Langeland claims to have suffered, none of them appears to have come about through reliance on Monarch's deemed admissions, and thus none of them constitutes prejudice within the meaning of rule 36(b). For example, Langeland argues that Monarch's delays have resulted in further depreciation of the automo-

bile's value. If so, the delay may affect the amount recoverable by Langeland if he is successful at trial; it does not mean that his presentation of the merits of the case has been prejudiced.

The trial court has the discretion to permit amendment or withdrawal of admissions against a party who moves for amendment under rule 36(b) when the presentation of the merits of the action would be served thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action on the merits. This rule burdens both the party seeking to amend the admissions and the party opposing amendment. Before the trial court can exercise its discretionary powers, the moving party must meet its burden and the nonmoving party must fail to meet its burden. The parties did precisely that in this case. Monarch Motors has shown that the admissions were both relevant and disputed and thus that the merits of the action would be served by amendment. Langeland failed to show any detrimental reliance on the admissions or to argue any other facts indicating that prejudice would result to him in maintaining his cause of action if the admissions were amended or withdrawn. The trial court found that these preliminary requirements had been satisfied, and it was therefore free to exercise its discretion either to grant or to deny Monarch's motion to amend the admissions. In this case, the trial judge chose to grant the motion and permit amendment.

We may doubt the wisdom of permitting defendants to amend their admissions after failing to respond for ten months and neglecting to explain their failure. But as long as there is some reasonable basis for the trial court's decision, we should not call it abuse of discretion. Here the dispositive nature of the issues deemed admitted against Monarch may provide an explanation for the trial court's determination to hear evidence on those matters.

In conclusion, the trial court has discretion to grant or deny a motion to amend admissions. However, a judge must deny such a motion if the amendment would not serve the presentation of the merits or if it would prejudice the nonmoving party in the presentation of its case. Neither of these conditions was present in this case, and I would hold that the trial judge was within her discretion in granting Monarch's motion to amend.