*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 28**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JORDAN CONSTRUCTION, INC.,
*Appellant,*

*v.*

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
*Appellee.*

No. 20160474
Filed May 22, 2017

On Direct Appeal

Fourth District, American Fork
The Honorable Christine S. Johnson
No. 080104364

Attorneys:

Darrel J. Bostwick, Jeffery J. Owens, Salt Lake City, for appellant

Alexander Dushku, Peter C. Schofield, Justin W. Starr,
Adam D. Wahlquist, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and
JUSTICE PEARCE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1   This case concerns a general contractor's attempt to recover on a mechanic's lien. Scott Bell, an employee of Jordan Construction, Inc., hired Jordan Construction as the general contractor to build a new home on property that he owned (the Property). Several months after the start of construction, Mr. Bell secured long-term financing and executed a trust deed on the Property. Mr. Bell then failed to pay Jordan Construction the full amount due for its work. When the home was nearly finished, Jordan Construction discovered that Mr.

Bell had been misusing company funds and terminated him. Mr. Bell responded by suing Jordan Construction. Jordan Construction in turn recorded a mechanic's lien and *lis pendens* on the Property and counterclaimed for breach of contract, embezzlement, and foreclosure of the mechanic's lien. Jordan Construction chose not to name the holder of the trust deed at that time.

¶ 2   While the suit was pending, Jordan Construction discovered that some subcontractors had not been paid for their work on the Property. Nearly nine months after the completion of construction, Jordan Construction filed an amendment to its notice of mechanic's lien to include the additional amounts owed to the subcontractors. Jordan Construction then obtained summary judgment on its counterclaims against Mr. Bell, applied for a writ of execution, and took steps to initiate a sheriff's sale of the Property.

¶ 3   Meanwhile, Mr. Bell had defaulted on his mortgage. The trust deed holder conducted a non-judicial foreclosure sale, and Federal National Mortgage Association (FNMA)[1] purchased the trustee's deed. FNMA then filed a motion asking the district court to quash the writ of execution and halt the sheriff's sale because neither it, nor its predecessor in interest, had been named in this action. Over Jordan Construction's objection, the district court quashed the writ and halted the sale. Jordan Construction then filed a third-party complaint against FNMA, asserting that its mechanic's lien had priority over FNMA's trustee's deed.

¶ 4   Having been brought in as a party to this action, FNMA then prevailed on a series of motions before the district court. Jordan Construction asserts on appeal that the district court erred in those decisions. First, the district court concluded that FNMA is not bound by the judgment rendered against Mr. Bell earlier in the case under either the *lis pendens* or the doctrine of *res judicata*. Second, the court ruled that Jordan Construction's amended notice of lien—which nearly doubled the amount claimed—was untimely. Third, it ruled that, under the 2008 Utah Code, Jordan Construction was not entitled to recover prejudgment interest on its mechanic's lien claim. In all, FNMA, by obtaining these rulings, whittled down the amount that Jordan Construction had sought in its third-party complaint— $336,568.66—to $126,956.92, the amount listed on the face of the

---

[1] At some point during the proceedings below, Bank of American Fork was substituted for FNMA. We refer to FNMA for convenience, as the parties have done in their briefs.

original lien. FNMA then stipulated to the payment of $126,956.92. The district court concluded that FNMA was the successful party and awarded it attorney fees under the mechanic's lien statute, a decision which Jordan Construction also challenges on appeal.

¶ 5   We affirm the district court's ruling as to each issue.

## Background

¶ 6   This case evolved in two phases. We first discuss the procedural facts involved in the first phase, where Jordan Construction asserted and prevailed on its counterclaims against Mr. Bell. We then discuss the second phase, where FNMA was brought into this action as a third-party defendant.

¶ 7   In 2006, Jordan Construction was hired by its employee, Mr. Bell, to be the general contractor on the construction of his new home. Construction on the home began in October 2006. Mr. Bell obtained long-term financing on January 31, 2008, executing a trust deed that encumbered the Property with the trustee's right to sell the property in case of default.

¶ 8   Near the end of construction, in October 2008, Jordan Construction discovered that Mr. Bell had been embezzling from the company and terminated his employment. The next month, Mr. Bell and his brother, Todd Bell, brought suit against Jordan Construction alleging, among other things, breach of contract. In December 2008, Jordan Construction recorded a Notice of Mechanic's Lien in the amount of $126,956.92 for its work on Mr. Bell's home.[2] It then counter-claimed for breach of contract, unjust enrichment, promissory estoppel, conversion, and foreclosure of its mechanic's lien, simultaneously recording a *lis pendens* on the Property. It did not, however, name the holder of the trust deed as a party to the action.

¶ 9   In the months after the suit was filed, Jordan Construction continued to investigate Mr. Bell's activities, discovering that he "kept few receipts and records demonstrating how many of the subcontractors were paid." Jordan Construction's principal, Wesley Lewis, had to perform a detailed accounting to determine how much Jordan Construction owed to subcontractors for work done on the Property, a task that was complicated by Mr. Bell's failure to keep accurate records. This accounting revealed a total of $232,976.81. In

---

[2] This notice was amended shortly after it was filed to correct a minor procedural error not relevant here.

July 2009, Jordan Construction amended its notice of mechanic's lien to reflect its newly calculated amount.

¶ 10 Several months after the amendment, in January 2010, Jordan Construction moved for partial summary judgment on all of its claims against Mr. Bell. Mr. Bell did not oppose the motion, and the court granted it in February 2010. Although Jordan Construction had requested summary judgment on the mechanic's lien claim in its motion, the court's February 2010 order did not mention that claim, an oversight the court did not correct until nearly eighteen months later.

¶ 11 In June 2010, the court entered an order containing its findings of fact and conclusions of law regarding Jordan Construction's counterclaims against Mr. Bell, but this order again made no mention of the mechanic's lien claim. Additionally, Jordan Construction still had not joined the holder of the trust deed to this action. Two months later, Jordan Construction sought permission from the district court to file a third-party complaint against the trust deed holder, but it did not serve that complaint.

¶ 12 Meanwhile, Mr. Bell had defaulted on the promissory note that was secured by the trust deed on the Property. FNMA purchased the trustee's deed at a non-judicial foreclosure sale on October 1, 2010. Jordan Construction later applied for a writ of execution in January 2011. As part of the application for this writ, Jordan Construction served on FNMA a "Checklist for Writ of Execution for Judgment Debtor and Persons with an Interest in the Property," "Notice of Execution and Exemptions," and a "Reply and Request for Hearing form." FNMA did not file a reply or request a hearing.

¶ 13 Jordan Construction did not immediately act on the writ, but instead moved in June 2011 to amend the court's order granting partial summary judgment against Mr. Bell to include the mechanic's lien foreclosure claim. The court, recognizing that its original order should have included the mechanic's lien claim, granted the motion in July 2011 and modified its findings of fact and conclusions of law in August 2011 to include that claim. Jordan Construction then requested that the Utah County Sheriff notice a proposed foreclosure sale of the Property, which was set for September 14, 2011.

¶ 14 FNMA then took its first action in this proceeding—it filed a motion to quash the writ and halt the sale. The court granted this request, and Jordan Construction then sought and was granted permission to file a third-party complaint against FNMA. This complaint against FNMA, the beginning of the second phase of this

case, contained only a single claim for declaratory relief. That claim sought a declaration that FNMA was bound by the findings of fact and conclusions of law entered against Mr. Bell earlier in the case. The district court granted FNMA's motion to dismiss the complaint because it concluded FNMA was not bound by its earlier ruling. Jordan Construction then amended its complaint, this time asserting the same declaratory relief claim and a mechanic's lien claim against FNMA. The district court again dismissed the declaratory relief claim, but it allowed the mechanic's lien claim to go forward.

¶ 15 After fact discovery, FNMA filed a number of motions for partial summary judgment. We discuss these motions, and the district court's rulings on them, in some detail because Jordan Construction challenges the district court's resolution of these motions on this appeal, and also because they are relevant for determining which party was "successful" in this action for attorney fee purposes.

¶ 16 FNMA first sought a ruling that it was not liable for attorney fees incurred in connection with the judgment rendered against Mr. Bell. Second, it argued that it was not bound by the judgment rendered against Mr. Bell earlier in the action. Third, it contended that Jordan Construction's second amended notice of lien, filed in July 2009 to add the amounts it paid to subcontractors, was untimely because it was filed more than 180 days after the certificate of occupancy was issued in October 2008. Finally, it sought a ruling that Jordan Construction was not entitled to prejudgment interest on its mechanic's lien claim brought under the 2008 Utah Code. Jordan Construction filed its own motion for summary judgment, arguing that FNMA was bound by the rulings entered against Mr. Bell and that its lien had priority over FNMA's interest.

¶ 17 The district court denied Jordan Construction's motion seeking a declaration that FNMA was bound by rulings entered against Mr. Bell, and it granted all of FNMA's motions except the one regarding the timeliness of the lien amendment. The court denied summary judgment on the timeliness of the lien because Jordan Construction had raised a new argument at oral argument—that a newly discovered certificate of occupancy was issued in June 2011. This newly discovered certificate contradicted an admission that Jordan Construction had made earlier in the litigation, which stated

> Request No. 2: Admit that Scott Bell began occupying the Property in October 2007.

Response: Admit that Scott Bell occupied the property pursuant to a temporary occupancy permit beginning in October 2007. However, construction on his home was not yet finished, no final inspection had been completed and no permanent occupancy permit had been issued until October 2008.

¶ 18 Based on this newly discovered certificate, Jordan Construction brought a motion for partial summary judgment arguing that the timeliness of the lien should be decided based on the certificate issued in 2011. FNMA filed its own motion arguing that summary judgment should be granted on the basis of Jordan Construction's admission that a certificate of occupancy was issued in October 2008. Jordan Construction then moved to withdraw the admission. The court denied Jordan Construction's motions to withdraw the admission and for summary judgment, and granted FNMA's motion, ruling that the second amendment to the lien was untimely.

¶ 19 The court also denied Jordan Construction's motion for summary judgment regarding the validity and priority of the original lien, because it found that there were genuine issues of material fact as to whether Jordan Construction materially abandoned construction for a time, which would sever the relation back of its lien. Rather than go through the expense of a trial on the priority issue, FNMA stipulated to the entry of judgment in the amount of the original mechanic's lien, $126,956.92.

¶ 20 FNMA then sought its attorney fees as the "successful" party in an action to enforce a mechanic's lien.[3] Jordan Construction also argued that it was the "successful" party and requested its attorney fees. The district court concluded that FNMA was the successful party because it prevailed on virtually every disputed issue and successfully reduced Jordan Construction's recovery to approximately 38% of the amount it originally sought in the third-party complaint.

¶ 21 Jordan Construction now appeals. It asserts that the district court erred in 1) quashing the writ of execution and halting the sheriff's sale; 2) concluding that FNMA is not bound by the partial

---

[3] Under Utah Code section 38-1-18(1) (2008), the "successful party" in an action to enforce a mechanic's lien "shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action."

summary judgment rendered against Mr. Bell in the first phase of this case; 3) concluding that Jordan Construction's second amended notice of lien was untimely; 4) concluding that prejudgment interest is not available on a mechanic's lien claim under the 2008 Utah Code; and 5) concluding that FNMA was the "successful" party below. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**Issues and Standards of Review**

¶ 22 This case presents five issues for our review. The first issue is whether the district court erred in quashing the writ of execution and halting the sheriff's sale. We review a district court's decision to reconsider an earlier decision for an abuse of discretion.[4]

¶ 23 The second issue is whether the district court erred in concluding that neither the *lis pendens* nor the doctrine of *res judicata* require that FNMA be bound by the partial summary judgment entered against Mr. Bell. This issue presents a question of law, which we review for correctness.[5]

¶ 24 The third issue is whether the district court erred in concluding that Jordan Construction's second amended notice of mechanic's lien was untimely. "An appellate court reviews a trial court's 'legal conclusions and ultimate grant or denial of summary judgment' for correctness, and views 'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'"[6]

¶ 25 One component of the third issue is whether the district court erred in refusing to permit Jordan Construction to withdraw its admission that a certificate of occupancy was issued for the Property in October 2008. The standard of review for amendment or withdrawal of admissions is a two-step, "'conditional' discretionary standard."[7] Rule 36(c) of the Utah Rules of Civil Procedure provides that a district court "may permit withdrawal or amendment" if two requirements are met: 1) "presentation of the merits of the action will

---

[4] *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588.

[5] *Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd.*, 2001 UT 106, ¶ 19, 37 P.3d 1121.

[6] *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations omitted).

[7] *Langeland v. Monarch Motors, Inc.*, 952 P.2d 1058, 1060 (Utah 1998).

be promoted," and 2) "withdrawal or amendment will not prejudice" the party who requested the admission. We review the question of whether these two threshold requirements have been satisfied under "a somewhat more exacting standard of review" than simple abuse of discretion.[8] If the threshold requirements are met, we then review the court's decision to grant the motion to withdraw or amend and will "reverse[] only upon a finding of abuse of discretion, i.e., if there is no reasonable basis for the decision."[9]

¶ 26 The fourth issue is whether the district court erred in concluding that prejudgment interest is unavailable under the 2008 version of the mechanic's lien statute. "A trial court's decision to grant or deny prejudgment interest presents a question of law which we review for correctness."[10]

¶ 27 The fifth issue is whether the district court erred in concluding that FNMA was the "successful" party in this action for attorney fee purposes. We review the district court's determination of who is successful in these circumstances for an abuse of discretion.[11]

## Analysis

¶ 28 The first question we must address is whether the district court erred in quashing the writ of execution and halting the sheriff's sale. Jordan Construction argues that FNMA waived its right to challenge the writ of execution by failing to file a request for hearing as provided in Utah Rule of Civil Procedure 64E. We reject this argument because the district court had discretion, under Utah Rule of Civil Procedure 54(b) and the law of the case doctrine, to revisit its earlier decision to issue the writ of execution. FNMA's decision not to file a request for hearing on the issuance of the writ did not deprive the district court of that discretion. The district court therefore did not abuse its discretion in quashing the writ and halting the sale.

¶ 29 We next explain that FNMA is not bound by the order entered against Mr. Bell under either the doctrine of *res judicata* or

---

[8] *Id.* at 1061.

[9] *Id.*

[10] *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 16, 82 P.3d 1064 (citation omitted).

[11] *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

the *lis pendens*. Jordan Construction argues that FNMA, which had notice of—but chose not to intervene in—the litigation against Mr. Bell, is bound by the interlocutory order granting partial summary judgment entered against him. This argument is based on Jordan Construction's assertion that FNMA is Mr. Bell's successor-in-interest to the Property because FNMA purchased the Property that Mr. Bell previously owned. In Jordan Construction's view, FNMA and Mr. Bell are in privity, and, as a result, FNMA took the property subject to the existing judgment that had been entered against Mr. Bell. But even assuming that FNMA was Mr. Bell's successor, which FNMA disputes, neither *res judicata* nor the recording of the *lis pendens* requires that FNMA be bound by the ruling entered against Mr. Bell, because that order was interlocutory. Under our precedent regarding the "law of the case" doctrine, a district court has broad discretion to revisit earlier rulings before a case has proceeded to a final judgment. The district court thus properly concluded that FNMA is not bound by the order granting partial summary judgment against Mr. Bell.

¶ 30 We then turn to Jordan Construction's second amended notice of lien, and we affirm the district court's judgment that the notice was untimely. In reaching this conclusion, we reject Jordan Construction's three arguments on this point. First, Jordan Construction argues that the district court erred in denying its request to withdraw its admission that a certificate of occupancy was issued in October 2008. We conclude that the district court had discretion to deny this request because FNMA would have been prejudiced by the long delay between the admission and the request to withdraw. Second, Jordan Construction argues that the doctrine of equitable tolling should be applied to toll the time for filing an amended notice of lien. We reject this argument as unpreserved. Finally, Jordan Construction argues that the relation back doctrine should apply to its second amended notice of lien, such that the amended notice should be treated as though filed on the date of its original notice of lien. We reject this argument because the legislature, through the mechanic's lien statute, has crafted a careful scheme that balances multiple interests, and for us to apply the relation back doctrine where the legislature has not provided for it would frustrate that scheme.

¶ 31 We then turn to the question of whether prejudgment interest is available on a mechanic's lien claim under the 2008 version of the Utah Code, which did not specifically provide for prejudgment interest. We affirm the district court's conclusion that prejudgment interest is unavailable. Because mechanic's liens are

creatures of statute, we have held that the value of items the legislature did not provide in those statutes cannot be claimed on the face of a mechanic's lien. As a logical extension of that conclusion, the overall recovery available in a mechanic's lien action, like the amount claimable in a notice of lien, is limited to the items expressly provided by the statute. We thus presume the legislature's omission of prejudgment interest was intentional and conclude that it is not available in a mechanic's lien action under the 2008 Utah Code.

¶ 32 Finally, we assess whether the district court abused its discretion in concluding that FNMA was the successful party for attorney fee purposes. We find no abuse of discretion because Jordan Construction sought an amount almost three times greater than what it ultimately recovered, and FNMA prevailed on virtually every motion throughout this litigation. We agree with the district court that it would be contrary to common sense to conclude that Jordan Construction was "successful" given these circumstances. The district court thus did not abuse its discretion. We address each issue in turn.

## I. The District Court Did Not Err in Quashing the Writ of Execution and Halting the Sheriff's Sale

¶ 33 Jordan Construction argues that the district court erred in quashing the writ of execution. The Utah Rules of Civil Procedure provide the process for obtaining and challenging writs. Under rule 64(e)(1), "[a]ny person claiming an interest in the property [that is the subject of a writ] has the same rights and obligations as the [party against whom judgment has been entered] with respect to the writ." If a person claiming an interest in the property is "named by the plaintiff and served with the writ and accompanying papers," then that person "shall exercise those rights and obligations within the same time allowed" the party against whom judgment has been entered.[12] For writs of execution, one such right is the right to "reply to [a] writ and request a hearing," which "shall be filed and served within 14 days after service of the writ and accompanying papers."[13] Reading these two rules together, a person claiming an interest in property that is the subject of a writ of execution who wishes to exercise the right to reply and request a hearing on the writ must file and serve such a reply and request for hearing "within 14 days after" being served with "the writ and accompanying papers."

---

[12] UTAH R. CIV. P. 64(e)(1).

[13] UTAH R. CIV. P. 64E(d)(1).

¶ 34 Jordan Construction argues that FNMA, as a "person claiming an interest" in the Property, had an obligation to "exercise [its] rights . . . within the same time allowed" Mr. Bell, the party against whom judgment had been entered in the first phase of this case. Jordan Construction asserts that, under these procedural rules, FNMA had only 14 days from the date it was served with the writ during which it could object to the writ. The parties do not dispute that FNMA did not file or serve a reply or request for hearing within that time. Jordan Construction argues that this "fail[ure] to follow procedural rules" deprived the district court of "discretion" to revisit its earlier decision to issue the writ.

¶ 35 We disagree. As an initial matter, Jordan Construction has cited no authority that a district court lacks discretion to quash a writ of execution where an interested person challenges that writ more than 14 days after receiving it. To the contrary, the general rule is that a district court has discretion to revisit *any* prior decision in a case before the entry of a final judgment.[14] But in any event, we need not decide the waiver question here because we conclude the district court in this case had discretion to revisit this writ because it was procedurally deficient. Rule 64E(a) provides that "[a] writ of execution is available to seize property in the possession or under the control of the defendant *following entry of a final judgment or order* requiring the delivery of property or the payment of money."[15] The writ in this case was issued in January 2011, before final judgment had been entered. At that point in the litigation, as Jordan Construction concedes, Mr. Bell's claims, as well as his brother's claims, against Jordan Construction remained pending, and none of

---

[14] Utah R. Civ. P. 54(b) ("*[A]ny* order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties, and may be changed at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (emphasis added)); *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588 ("While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision.").

[15] Utah R. Civ. P. 64E(a) (emphasis added).

Jordan Construction's counterclaims had been certified as final under Utah Rule of Civil Procedure 54(b).[16]

¶ 36 So even in the absence of FNMA's request, the district court would have been within its discretion to quash the writ because the writ never should have been issued. Because there had not been a "final judgment," a writ of execution was not available under these circumstances, and the district court could have revisited its decision to grant the writ for that reason alone.[17] The fact that FNMA called the court's attention to other reasons for quashing the writ does not deprive the district court of authority to revisit a decision that it would otherwise have discretion to reconsider. We therefore reject Jordan Construction's argument and hold that the district court did not abuse its discretion in quashing the writ and halting the sheriff's sale.

## II. The District Court Correctly Concluded that FNMA Is Not Bound by the Interlocutory Order Entered Against Mr. Bell by Either the Recording of the *Lis Pendens* or the Doctrine of *Res Judicata*

¶ 37 Jordan Construction argues that because FNMA purchased the Property that Mr. Bell previously owned, FNMA is Mr. Bell's successor-in-interest, and FNMA should therefore be bound by the judgment entered against Mr. Bell in the early stages of this case. It makes two arguments in support of this claim. First, it argues that the *lis pendens* recorded at the outset of this suit put FNMA on notice that it was buying the Property subject to the outcome of the litigation, and second, that the doctrine of *res judicata* prevents FNMA from re-litigating the order entered against Mr. Bell. We reject both arguments because the case had not proceeded to a final

---

[16] *See* UTAH R. CIV. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, cross claim, or third party claim—and/or when multiple parties are involved, the court may enter judgment as to one or more but fewer than all of the claims or parties only if the court expressly determines that there is no just reason for delay.").

[17] FNMA also argues that it had no obligation to file a request for hearing because, at the time of the application for writ of execution, the underlying order that supported the application for writ did not mention the mechanic's lien claim. We do not reach this question because we conclude the district court had the discretion to revisit its earlier ruling based on the procedural deficiency of the writ.

judgment when FNMA requested the district court to revisit its earlier rulings.[18]

*A. The Recording of the* Lis Pendens *Does Not Require that FNMA Be Bound by the Interlocutory Order Entered Against Mr. Bell*

¶ 38 The parties agree on the general legal effect that follows the recording of a *lis pendens*. "The recording of a lis pendens provides constructive notice to all persons that the rights and interests in the property at issue are controverted. One who purchases property subject to a lis pendens acquires only the grantor's interest therein, as determined by the outcome of the litigation."[19] But the parties here dispute what the "outcome of the litigation" means. In FNMA's view, it means a final judgment on the merits.[20] In Jordan Construction's view, it means "the judgment against [Mr.] Bell insofar as it applies to the property in question." Jordan Construction's argument is that FNMA was required to intervene in the litigation before the district court entered its order against Mr. Bell, and because it did not, it is bound by that "outcome." We agree with FNMA.

¶ 39 Jordan Construction provides no explanation for why the "outcome of the litigation" should include an interlocutory order. That is, it provides no reasoning for why FNMA was required to intervene in the litigation before the judgment against Mr. Bell was

---

[18] As noted below, FNMA disputes the notion that it is Mr. Bell's successor-in-interest. *See infra* ¶ 38 n.20, ¶ 42 n.24. We do not address these alternative arguments because, even assuming FNMA is Mr. Bell's successor-in-interest, the district court did not err in concluding that FNMA was not bound by the earlier order entered against Mr. Bell.

[19] *Timm v. Dewsnup*, 921 P.2d 1381, 1392 (Utah 1996).

[20] FNMA also makes a second argument: that a *lis pendens* affects only a property interest that is "the subject of pending litigation," and that only Mr. Bell's interest—and not the trust deed holder's interest—was the "subject of the litigation" because Jordan Construction did not name the trust deed holder in its mechanic's lien foreclosure action. *See Bagnall v. Suburbia Land Co.*, 579 P.2d 914, 916 (Utah 1978). We do not reach this question, because we conclude that, in any event, FNMA is bound only by the *outcome* of the litigation.

entered. We conclude that one who purchases property subject to a *lis pendens* is bound only by a *final* judgment rendered against the seller, but if the purchaser acquires the property while the litigation remains pending, we see no reason why that purchaser should not be entitled to ask the court to revisit its earlier interlocutory rulings against its predecessor in interest.

¶ 40 Having decided that a *lis pendens* binds purchasers only to a final judgment, and not to interlocutory rulings, the question then is whether the judgment rendered against Mr. Bell was final. As noted above, it was not. Mr. Bell's and his brother's claims against Jordan Construction had not yet been resolved. And there was no 54(b) certification of Jordan Construction's counterclaims against Mr. Bell.[21] In the absence of a final judgment, the district court did not abuse its discretion in granting FNMA's request that it revisit its earlier interlocutory rulings.

¶ 41 In sum, FNMA is bound only by the outcome of the litigation, and the litigation here had not progressed to an outcome at the time FNMA asked the district court to revisit its order. Therefore, the *lis pendens* does not bind FNMA to the interlocutory order entered against Mr. Bell in the first phase of this case. We next discuss why, for a similar reason, *res judicata* does not bind FNMA.

*B. The Doctrine of* Res Judicata *Does Not Require that FNMA Be Bound by the Interlocutory Order Entered Against Mr. Bell*

¶ 42 Jordan Construction argues that the district court erred in concluding that FNMA is not bound under the doctrine of *res judicata* by the judgment rendered against Mr. Bell.[22] This doctrine promotes judicial efficiency and consistency by preventing re-litigation of issues and claims already resolved in a final judgment on the merits between the same parties or their privies.[23] Jordan

---

[21] *See supra* ¶ 35.

[22] The doctrine of *res judicata* includes two species: issue preclusion and claim preclusion. *Oman v. Davis Sch. Distr.*, 2008 UT 70, ¶ 28, 194 P.3d 956. Jordan Construction does not specify which it is claiming applies here. Ultimately, the distinction does not matter for this case, because both types require a final judgment in an earlier proceeding.

[23] *See id.* (noting that the doctrine's purposes "include '(1) preserving the integrity of the judicial system by preventing inconsistent judicial outcomes; (2) promoting judicial economy by preventing previously litigated issues from being relitigated; and

(Continued)

Construction's argument fails because this doctrine does not apply given that there had not yet been a final judgment at the time that FNMA entered this case.[24]

¶ 43 Jordan Construction concedes that both claim and issue preclusion require a "final judgment on the merits in [a] previous action."[25] It argues, however, that what is a "final judgment" for *res judicata* purposes is different than what is a "final judgment" in other contexts, for example for appeal purposes. In its view, "[t]he two concepts are not necessarily tied together." It argues that because the district court decided "all issues relating to the property" between Jordan Construction and Mr. Bell, this constitutes a "final judgment on the merits" for *res judicata* purposes.

¶ 44 There is simply no support for the premise that "final judgment" means something different for *res judicata* purposes than its well-established meaning for purposes of an appeal. To the contrary, Jordan Construction's interpretation of "final judgment" would likely sow confusion and is inconsistent with our procedural rules and other areas of our caselaw. First, rule 54(b) of the Utah Rules of Civil Procedure provides that "*any* order or other decision, however designated . . . may be changed at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."[26] Second, we have a specific doctrine that deals with a district court's discretion to revisit interlocutory rulings before the entry of final judgment: the "law of the case" doctrine. We have said that "[w]hile a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior

---

(3) protecting litigants from harassment by vexatious litigation.'" (citation omitted)).

[24] FNMA also argues that *res judicata* is inapplicable because FNMA was not in privity with Mr. Bell. We do not reach this issue because our conclusion that there had been no final judgment is dispositive.

[25] *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1370 (Utah 1996) (issue preclusion); *Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 29, 221 P.3d 194 (claim preclusion).

[26] UTAH R. CIV. P. 54(b) (emphasis added).

decision, but the court remains free to reconsider that decision."[27] It would thus be inconsistent with our law of the case doctrine to hold that a district court is barred, under *res judicata* principles, from revisiting issues it has decided earlier in the same case before entering a final judgment.

¶ 45 We conclude that the *res judicata* doctrine's requirement of a "final judgment" does not include an interlocutory ruling within the course of a single proceeding. Rather, "final judgment" has the same meaning as that term does for purposes of appeal. As discussed above, the district court's order granting partial summary judgment against Mr. Bell was not final because other claims remained pending in the case, and no rule 54(b) certification had been issued.[28] The district court thus correctly concluded that the doctrine of *res judicata* does not bind FNMA under these circumstances.

### III. The District Court Did Not Err in Concluding that Jordan Construction's Second Amended Notice of Mechanic's Lien Was Untimely

¶ 46 The parties agree that the timeliness of the second amended notice of mechanic's lien turns on the date a certificate of occupancy was issued for the Property. Under the statute, a party has 180 days from that date to file its notice of lien.[29] It is undisputed that Jordan Construction filed its second amended notice of lien in July 2009, more than 180 days after October 2008. Jordan Construction makes three arguments in support of its claim that its second amended notice was nevertheless timely. First, it argues that the district court abused its discretion in refusing to permit Jordan Construction to withdraw its admission that a certificate of occupancy was issued in October 2008. Second, it argues that equitable tolling principles apply to toll the time for amending its notice of mechanic's lien. Finally, it argues that the relation back doctrine should apply, such that the second amended notice of mechanic's lien should be treated

---

[27] *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588.

[28] *See supra* ¶ 35.

[29] The statute requires that a notice of lien be filed within 180 days of "final completion of the original contract," which the parties agree in this case means "the date of issuance of a permanent certificate of occupancy by the local government entity having jurisdiction over the construction project." UTAH CODE § 38-1-7(1) (2008).

as though filed on the date the notice of lien was originally filed. None of these arguments has merit.

*A. The District Court Did Not Abuse Its Discretion in Refusing to Permit Jordan Construction to Withdraw Its Admission that a Certificate of Occupancy Was Issued in October 2008*

¶ 47 Jordan Construction admitted in response to a discovery request that the issuance of a certificate of occupancy—the key date for the timeliness of the notice of lien—occurred in October 2008. The admission stated:

> Request No. 2: Admit that Scott Bell began occupying the Property in October 2007.

> Response: Admit that Scott Bell occupied the property pursuant to a temporary occupancy permit beginning in October 2007. However, construction on his home was not yet finished, no final inspection had been completed and no permanent occupancy permit had been issued until October 2008.

¶ 48 After discovering a certificate of occupancy issued by Provo City in June 2011, Jordan Construction sought to withdraw its admission. The district court denied its request. Rule 36(c) of the Utah Rules of Civil Procedure provides the framework for requests to withdraw an admission: A district court "may permit withdrawal or amendment" if two requirements are met: 1) "presentation of the merits of the action will be promoted," and 2) "withdrawal or amendment will not prejudice" the party who requested the admission. Because the presence of those threshold requirements is a prerequisite for a court to allow withdrawal or amendment, their presence or absence is subject to "a somewhat more exacting standard of review" than simple abuse of discretion.[30] After considering the threshold requirements, this court then reviews the district court's decision to grant or deny the motion to withdraw or amend, and will "reverse[] only upon a finding of abuse of discretion, i.e., if there is no reasonable basis for the decision."[31]

¶ 49 First, the district court concluded that allowing withdrawal would not promote presentation of the merits of the action. We need

---

[30] *Langeland v. Monarch Motors, Inc.*, 952 P.2d 1058, 1061 (Utah 1998).

[31] *Id.*

not reach this issue because we conclude that the district court's prejudice determination was correct, and therefore it had discretion to deny Jordan Construction's request to withdraw.[32]

¶ 50 Second, to determine whether "a party will be prejudiced by the withdrawal of an admission," we ask "whether the party is now any less able to obtain the evidence required to prove the matter which was admitted than he would have been at the time the admission was made."[33] There are a number of grounds to support the conclusion that FNMA would now have greater difficulty obtaining evidence to prove that the issuance of a certificate of occupancy occurred in October 2008. Jordan Construction's admission was filed February 1, 2013. It did not seek to withdraw its admission until April 6, 2015. As FNMA points out, this date was "26 months after making the admission, more than a year after fact discovery closed, and six-and-a-half years after the case was originally filed." Perhaps most problematic is that Jordan Construction was provided a copy of the 2011 certificate of occupancy in July 2013, and yet still did not seek to withdraw its admission until nearly two years later, long after the close of fact discovery.

¶ 51 Because Jordan Construction had admitted that a certificate of occupancy was issued in October 2008, FNMA took no steps in discovery to ascertain the date the certificate of occupancy was issued. We agree with the district court that, if withdrawal were permitted at this late stage, "FNMA would be left attempting to depose witnesses in order to confirm" that a certificate had been issued many years earlier, a fact that "it seems unlikely that any witness would be equipped" to address. The district court properly

---

[32] Jordan Construction also argues that it should have been allowed to withdraw its admission because the facts it admitted were not necessary to answer the request for admission, and, in its view, rule 36 does not allow for "additional explanation or qualified admissions." But the rule is phrased broadly, in that it provides that "*[a]ny* matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." UTAH R. CIV. P. 36(c) (emphasis added). There is nothing in the rule that prohibits a party from making a broader admission than is technically called for by the request for admission. We conclude that parties offer overly broad admissions at their peril.

[33] *Langeland*, 952 P.2d at 1063 (citation omitted).

concluded that FNMA would be prejudiced by Jordan Construction's long delay in seeking withdrawal of its admission, and therefore properly rejected Jordan Construction's request to withdraw the admission.

*B. Jordan Construction Did Not Preserve the Issue of Whether Principles of Equitable Tolling Apply to Its Amended Notice of Mechanic's Lien*

¶ 52 Jordan Construction next argues that principles of equitable tolling should be applied to toll the statutory deadline for filing a notice of mechanic's lien. We decline to address this argument because it was not raised before the district court.

¶ 53 "As a general rule, we 'will not consider an issue unless it has been preserved in the court below.'"[34] Jordan Construction makes no response to FNMA's assertion that this issue was unpreserved. In the proceedings below, Jordan Construction's memorandum in opposition to FNMA's motion on the timeliness of the second amended lien contains arguments regarding only substantial compliance, *res judicata*, and relation back. We are unable to find the equitable tolling issue preserved in the record, and we therefore decline to address this argument.

*C. The Relation Back Doctrine Does Not Apply to Amendments to Notices of Mechanic's Liens*

¶ 54 Jordan Construction finally argues that its notice of mechanic's lien was timely under the doctrine of "relation back." To support this argument, Jordan Construction invokes Utah Rule of Civil Procedure 15(c), which permits subsequent pleadings to relate back to the date of the initial pleading in certain circumstances.[35] Jordan Construction argues that the "rationale" of this rule should be applied to statutory deadlines for filing mechanic's lien notices. In its view, because the rules of civil procedure allow for amended pleadings to relate back to the date of filing the initial pleading in certain circumstances, amendments to mechanic's lien notices should

---

[34] *VCS, Inc. v. Countrywide Home Loans, Inc.*, 2015 UT 46, ¶ 33, 349 P.3d 704 (citation omitted).

[35] *See* UTAH R. CIV. P. 15(c) (2016) ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.").

similarly relate back to the date of original filing whenever those circumstances are met.

¶ 55 We reject this argument. Jordan Construction provides no authority supporting the proposition that the rationale underlying rule 15(c) can be applied to mechanic's lien notices. Unlike rule 15(c), the mechanic's lien statute is silent regarding relation back of amendments. It provides that "a person claiming benefits under this chapter shall file . . . a written notice to hold and claim a lien within" the statutory timeline.[36] "[O]ur general rule is that we will 'give effect to omissions in statutory language' by presuming them to be purposeful."[37] Because mechanic's liens are peculiarly creatures of statute, they are particularly unsuited for uncodified exceptions to statutory deadlines.[38] To hold that amendments made after the statutory deadline relate back to the date of initial filing would be to infer a substantive term not provided by the legislature, which would frustrate the carefully balanced scheme it chose to implement. Instead, to gain the benefits of the statute, a party must comply with its terms.[39] We thus hold that, in the absence of a statutory term so providing, the relation back doctrine has no application to mechanic's lien notice deadlines.

¶ 56 In sum, the district court did not err in concluding that the second amended notice of lien was untimely. We next turn to the issue of prejudgment interest.

IV. The District Court Did Not Err in Concluding that Prejudgment Interest Is Unavailable Under the 2008 Version of the Mechanic's Lien Statute

¶ 57 Jordan Construction argues that the district court erred in concluding that it was not entitled to prejudgment interest on its

---

[36] UTAH CODE § 38-1-7(1)(a)(i) (2008).

[37] *2 Ton Plumbing, L.L.C. v. Thorgaard*, 2015 UT 29, ¶ 47, 345 P.3d 675 (citation omitted).

[38] *See id.* ¶ 32 ("[W]e presume 'that the expression of one [term] should be interpreted as the exclusion of another,' and will not 'infer substantive terms into the text that are not already there.'" (second alteration in original) (citations omitted)).

[39] *See AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986) (per curiam) ("[C]ompliance with the statute is required before a party is entitled to the benefits created by the statute.").

mechanic's lien claim arising under the 2008 Utah Code. We affirm the district court and hold that prejudgment interest is not available on mechanic's lien claims brought under this version of the statute.[40]

¶ 58 Jordan Construction argues that a mechanic's lien action fits within our caselaw describing when prejudgment interest is available. "[W]e have stated that prejudgment interest may be proper when 'the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'"[41] Jordan Construction relies on this statement of our common law rule for the availability of prejudgment interest to argue that prejudgment interest is available on mechanic's lien claims, despite statutory silence on the issue. But this argument overlooks the unique nature of mechanic's liens and our precedent describing them as being creatures of statute.

¶ 59 First, the only prejudgment interest cases cited by Jordan Construction are also breach of contract cases that do not address a mechanic's lien claim untethered to a breach of contract.[42] Because the contractual claims at issue in these cases entitled the prevailing party to prejudgment interest, these cases did not make a distinction between the availability of prejudgment interest based on a breach of

---

[40] We note that the mechanic's lien statute was amended in 2012 to expressly provide for prejudgment interest. UTAH CODE § 38-1a-309 (2012). The parties dispute the relevance of this amendment to the availability of prejudgment interest. As is typical in cases involving subsequent legislative amendment, one party contends the amendment clarified the law, and the other contends that it changed the law. We need not delve into this question here because we consider other sources of authority sufficient to determine that prejudgment interest was unavailable under the 2008 Utah Code.

[41] *Iron Head Constr., Inc. v. Gurney*, 2009 UT 25, ¶ 11, 207 P.3d 1231 (second alteration in original) (citation omitted).

[42] *E.g., id.* ¶ 3 ("Iron Head filed both a mechanic's lien against the Gurneys' home and a suit alleging breach of contract, unjust enrichment, and quantum meruit, and requesting foreclosure of the mechanic's lien."); *Lignell v. Berg*, 593 P.2d 800, 809 (Utah 1979) ("In contract cases, certainly, interest on amounts found to be due in judicial proceedings is recovery to which the creditor is entitled as a matter of law.").

contract claim and based on a mechanic's lien claim. These cases are thus unhelpful to the ultimate resolution of the issue before us. Moreover, Jordan Construction has not cited any cases outside of this jurisdiction where prejudgment interest was awarded on a mechanic's lien claim even though the applicable statute—like Utah's—is silent on prejudgment interest.

¶ 60 Second, we are dealing with mechanic's liens, which we have said are "statutory creatures unknown to the common law."[43] Given that these statutes create rights unknown to the common law, the scope of the rights created are coextensive with what is provided for by statute. In *2 Ton Plumbing, L.L.C. v. Thorgaard*, we recognized this principle in holding that a lien claimant's notice of lien was invalid where it included items not specifically recognized by statute as being the subject of a mechanic's lien.[44] There we said that "[w]hen interpreting statutory text, we presume 'that the expression of one [term] should be interpreted as the exclusion of another,'" and we "will not 'infer substantive terms into the text that are not already there.' '[W]e assume, absent a contrary indication, that the legislature used each term advisedly . . . [and] seek to give effect to omissions in statutory language by presuming all omissions to be purposeful.'"[45]

¶ 61 Jordan Construction argues that *2 Ton*'s holding spoke only to what amounts a party may validly list on the face of its lien and that we did not address what is ultimately recoverable in an action to enforce the lien. While that may be true, the principle underlying our decision in that case compels its extension to the present case. The extent of overall recovery available on a mechanic's lien claim, just like the amount that can be validly listed on the lien itself, can be no broader than what is provided for by statute. In *2 Ton*, we stated that "where the statute fails, courts cannot create rights" and "[a] lien created solely by statute depends on the terms of the statute."[46]

¶ 62 This conclusion is supported by the fact that the legislature has elsewhere delineated what is ultimately recoverable in a

---

[43] *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986) (per curiam).

[44] 2015 UT 29, ¶ 43, 345 P.3d 675.

[45] *Id.* ¶ 32 (second, third, fourth, and fifth alterations in original) (citations omitted).

[46] *Id.* ¶ 21 (citations omitted).

mechanic's lien claim beyond the amount listed on the face of the lien. For example, the legislature specifically provided that attorney fees are recoverable in an action to recover on the lien.[47] While it specifically provided for attorney fees, it did not provide that prejudgment interest is recoverable in the action. The principle that underlies our *2 Ton* decision is that what is left unsaid in the mechanic's lien statute is not available for recovery in a mechanic's lien action.

¶ 63 Finally, other jurisdictions, which we cited with approval in *2 Ton*, have also reached the conclusion that where prejudgment interest is not specifically enumerated as recoverable in a mechanic's lien claim, it is unrecoverable.[48]

¶ 64 We therefore affirm the district court and conclude that prejudgment interest is unavailable on a mechanic's lien claim under the 2008 Utah Code.

### V. The District Court Did Not Abuse Its Discretion in Concluding that FNMA Was the Successful Party in this Action for Attorney Fee Purposes

¶ 65 Jordan Construction argues that it was an abuse of discretion for the district court to conclude that FNMA was the "successful"[49] party in the proceedings below. Utah Code section 38-1-18(1) (2008) provides that the "successful party" in an action to enforce a mechanic's lien "shall be entitled to recover a reasonable

---

[47] UTAH CODE § 38-1-18(1) (2008).

[48] *See Nat'l Lumber Co. v. United Cas. & Sur. Ins. Co.*, 802 N.E.2d 82, 88 (Mass. 2004) (statutory interest not available on mechanic's lien claim because "the nature of the [] action is in rem, to enforce a lien" and therefore does not involve "contractual obligations"); *Artsmith Dev. Grp., Inc. v. Updegraff*, 868 A.2d 495, 497 (Pa. Super. Ct. 2005) (holding that trial court properly denied claim for interest "because the mechanics' lien statute . . . does not authorize a lien for these amounts" and noting that "[i]tems other than labor and materials are more properly sought in an action for breach of the construction contract, if that contract authorizes recovery of interest").

[49] We have treated the inquiry of who is a "successful party" under this statute as synonymous with the issue of who is a "prevailing party" in other contexts, *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 19, 94 P.3d 270, and we continue to treat the terms synonymously here.

attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action." We have directed lower courts to "use their common sense in deciding whether a party was 'successful' in bringing or defending against a mechanic's lien enforcement action."[50] We specifically cautioned against considering only "the net judgment in the case" and stressed the importance of "'looking at the amounts actually sought and then balancing them proportionally with what was recovered.'"[51] The district court followed this instruction precisely in concluding that FNMA was the successful party. We therefore find no abuse of discretion.[52]

¶ 66 Jordan Construction makes only one argument: in its view, it was "successful" because it recovered the amount on the face of its original lien, $126,956.92. The premise of this argument is that because FNMA stipulated to the payment of some amount toward a mechanic's lien claim, Jordan Construction was "successful" on that claim. But this argument is inconsistent with our precedent. As this case shows, a party can ultimately recover some amount on a mechanic's lien claim, but still not be "successful" in the action.

¶ 67 For example, a similar argument was made in *A.K. & R. Whipple Plumbing and Heating v. Guy*.[53] There, we declined to adopt "a rigid rule that would deprive trial courts of their power to apply their discretion and common sense to this issue, and would require a trial court to award fees to whichever party emerged with a net judgment, no matter how insignificant."[54] We concluded that "[s]uch a result is not required by the statute."[55] But that's essentially what Jordan Construction asks for here: a rigid application of a rule that would mean, because Jordan Construction obtained some amount of recovery on its mechanic's lien claim, it therefore was "successful" on that claim. We reject this approach.

¶ 68 Consistent with our precedent, the district court issued a detailed analysis of the "common sense" approach it applied in determining FNMA to be the successful party. The court conceded

---

[50] *Id.* ¶ 26.

[51] *Id.* (citation omitted).

[52] *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

[53] 2004 UT 47, 94 P.3d 270.

[54] *Id.* ¶ 25.

[55] *Id.*

that if Jordan Construction had, from the outset, sought to enforce only its original lien and recovered the amount that it did here, it would undoubtedly have been the successful party. But that is not what happened. Here, Jordan Construction's third-party complaint against FNMA alleged that it was entitled to recover $336,568.66 at the sheriff's sale of the Property. In the end, it recovered just over one-third of that amount. Thus, between a total victory for Jordan Construction and a total victory for FNMA, the amount recovered was closer to a total victory for FNMA.

¶ 69 Moreover, the court noted that Jordan Construction lost on almost all of the disputed issues that were resolved on motion before the court. FNMA successfully 1) quashed the writ of execution, 2) moved to dismiss the first third-party complaint, 3) moved to dismiss one of the two claims in the amended third-party complaint, and 4) whittled down the amount on the mechanic's lien claim to $126,956.92 through a number of motions for partial summary judgment. Jordan Construction lost motion after motion, and in the end it achieved what the district court called a "pyrrhic" victory. The district court was correct that it would "strain[] logic" to conclude that Jordan Construction should recover its fees here; instead, FNMA was the "comparative victor."

¶ 70 We agree with the district court's analysis. A district court has discretion to view the entire course of proceedings and assess whether a party who achieved some amount of recovery on a mechanic's lien claim was "successful" on that claim or not. We accordingly affirm on this issue.

VI. FNMA Is Entitled to Reasonable Attorney Fees
Incurred on Appeal

¶ 71 FNMA requests its attorney fees for this appeal. "[W]hen a party is entitled to attorney fees below and prevails on appeal, that party is 'also entitled to fees reasonably incurred on appeal.'"[56]  As discussed above, the district court awarded attorney fees to FNMA for being the "successful" party in the action to foreclose on the mechanic's lien. Because we affirm the district court, we conclude that FNMA is entitled to attorney fees for this appeal. We remand this case to the district court for an award of attorney fees reasonably incurred on this appeal.

---

[56] *Dillon v. S. Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 61, 326 P.3d 656 (citation omitted).

**Conclusion**

¶ 72 We affirm the district court on all grounds. The district court had discretion to quash the writ of execution and halt the sheriff's sale because it was merely reconsidering a prior ruling, which is well within a district court's discretion. The district court correctly concluded that FNMA is not bound by the interlocutory order entered against Mr. Bell. Jordan Construction has failed to show that the district court erred in concluding its second amended notice of mechanic's lien was untimely. The district court had discretion to deny Jordan Construction's request to withdraw its admission; the doctrine of relation back does not apply to mechanic's lien statutory deadlines; and the issue of equitable tolling was not preserved. The district court also correctly concluded that prejudgment interest is not available on mechanic's lien claims under the 2008 version of the statute, because that statute does not specifically provide for such interest. And finally, we find no abuse of discretion in the district court's conclusion that FNMA was the successful party for attorney fee purposes. We accordingly affirm and remand for the district court to determine the appropriate fee award.